UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**GREG MROSS, et al., individuals on behalf of
others similarly situated,**
           **Plaintiffs,**

    v.                                    Case No. 15-C-0435

**GENERAL MOTORS COMPANY, LLC,**
           **Defendant.**

---

### DECISION AND ORDER

The plaintiffs in this case are nineteen individuals who purchased vehicles manufactured by General Motors Company, LLC ("GM"), after July 2009. The vehicles are "GMT900 truck platform series vehicles," which include the Chevrolet Silverado Series, GMC Sierra series, Chevrolet Tahoe series, GMC Yukon series, Cadillac Escalade series, Chevrolet Suburban series, and Chevrolet Avalanche series. Compl. ¶ 1.[1] The plaintiffs allege that these vehicles contain a manufacturing or design defect that will cause "a large discernable crack" to form in the vehicle's dashboard panel "[a]t some point during the life" of the vehicle. *Id.* ¶¶ 2, 70–71. The complaint alleges that the cracks most commonly occur in two areas of the dashboard: at the steering column cowling and the passenger airbag area. *Id.* ¶ 3. The complaint alleges that the cost of repairing a dashboard that has cracked in this fashion ranges from $100 to $2,000. *Id.* ¶ 72. The complaint further alleges that the cracking problem poses a safety risk. Specifically, the complaint alleges that "[t]he cracking around the airbag is particularly

---

[1] The complaint contains a numbering error. After paragraph 13, the numbering restarts at 1. I will cite the first 13 paragraphs as paragraphs 1–13. I will cite the next 13 paragraphs as paragraphs 1a–13a.

1

troubling as it could interfere with the deployment of [the] passenger airbag," that "[t]he dash is more likely to splinter in unplanned and potentially dangerous directions during [airbag] deployment," and that "the dashboard portion is more susceptible to shattering, which creates the potential for bodily harm from shrapnel during impact." *Id.* ¶ 4.

The plaintiffs do not allege that anyone has been injured by a cracked GM dashboard, and they are not seeking damages for personal injuries. Rather, they bring class-action claims for economic losses under various fraud and breach-of-warranty theories. These theories arise under the laws of each of the eleven states in which the plaintiffs purchased their vehicles,[2] under Michigan law (where no plaintiff purchased a vehicle but where GM has its headquarters), and under the federal Magnuson-Moss Warranty Act. The fraud claims allege that GM had a duty to disclose to all purchasers of its vehicles that the dashboards were likely to crack, but failed to do so. The breach-of-warranty and Magnuson-Moss claims allege that GM's actions concerning the cracked dashboards resulted in breaches of the implied warranty of merchantability. Federal subject matter jurisdiction is present under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from GM,[3] there are more than 100 class members nationwide, and the

---

[2] These states are Arizona, Arkansas, California, Florida, Indiana, Nevada, Missouri, Texas, South Carolina, Virginia, and Wisconsin.

[3] The complaint alleges that GM is a limited liability company, the sole member of which is General Motors Holding LLC, and that the sole member of General Motors Holding LLC is General Motors Company, which is a Delaware corporation that has its principal place of business in Michigan. ¶ 58. GM is thus a citizen of the states of Delaware and Michigan. The claims in this case involve a nationwide class and subclasses made up of individuals who purchased vehicles in many different states in the United States. At least one member of these classes is not a citizen of Michigan or Delaware.

2

alleged aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs. Compl. ¶ 2.

GM has moved to dismiss the complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. In construing plaintiff's complaint, I assume all factual allegations to be true but disregard allegations that are conclusory. *Iqbal*, 556 U.S. at 678.

I begin by assessing the plaintiffs' fraud-related claims. The plaintiffs bring a number of counts for common-law fraud—specifically, for "fraud by concealment"—under the laws of twelve states.[4] They also bring claims under various state statutes regulating deceptive trade practices and related matters.[5] None of these claims depend

---

[4] These states are Michigan, Arizona, Arkansas, California, Florida, Indiana, Nevada, Missouri, South Carolina, Texas, Virginia, and Wisconsin.

[5] The statutes involved are: the Arizona Consumer Fraud Act, the Arkansas Deceptive Trade Practice Act, the California Consumer Legal Remedies Act, the California Unfair Competition Law, the Florida Unfair and Deceptive Trade Practices Act, the Indiana Deceptive Consumer Sales Act, the Nevada Deceptive Trade Practices Act, the Missouri Merchandising Practices Act, the South Carolina Unfair Trade Practices Act, the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act, the Texas Deceptive Trade Practices–Consumer Protection Act, the Virginia Consumer Protection Act, and the Wisconsin Deceptive Trade Practices Act.

3

on the allegation that GM made any statements that were false.[6]  Rather, the claims allege that GM failed to disclose the cracked-dashboard defect to potential purchasers.

The parties have not pointed to any significant differences in the laws of the states at issue regarding a manufacturer's failure to disclose a product defect, and my own research indicates that there are none.  The Restatement (Second) of Torts §§ 550 and 551 appear to accurately summarize the law.[7]  There are two theories of liability that could apply to this case.  The first, recognized in § 550 of the Restatement, is fraudulent concealment.  Under that theory, "[o]ne party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss[,] as though he had stated the nonexistence of the matter that the other was thus prevented from discovering."  Restatement (Second) of Torts § 550 (Am. Law Inst. 1977).  This rule generally applies in two situations.  The first occurs when the defendant actively conceals a defect or problem in an item offered for sale to another.  *Id.* cmt. a.  So, for example, a seller of a home cannot cover up signs of termites by installing wallboard to

---

[6] To be sure, the plaintiffs allege that GM made very general statements about the safety and quality of its products. Compl. ¶ 13. However, the plaintiffs do not base any of their fraud claims on these statements.

[7] Although not every state whose law applies to this case has explicitly adopted sections 550 and 551 of the Restatement, almost all of them have relied on these sections to some extent.  *See Baskin v. Collins*, 806 S.W.2d 3, 5 (Ark. 1991); *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Pension Trust*, 38 P.3d 12, 34–36 (Ariz. 2002); *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 96 (Ct. App. 2001); *Wells v. John Hancock Mut. Life Ins. Co.*, 85 Cal. App. 3d 66, 72 n.8 (Ct. App. 1978) ; *Gutter v. Wunker*, 631 So.2d 1117, 1118 (Fla. Ct. App. 1994); *Crum v. AVCO Fin. Servs. of Indianapolis, Inc.*, 552 N.E.2d 823, 830 n.6 (Ind. Ct. App. 1990); *U.S. Fidelity and Guaranty Co. v. Black*, 313 N.W.2d 77, 89 (Mich. 1981); *Kesselring v. St. Louis Group, Inc.*, 74 S.W.3d 809, 814 (Mo. Ct. App. 2002); *Guilfoyle v. Olde Monmouth Stock Transfer Co., Inc.*, 335 P.3d 190, 198 (Nev. 2014); *Bradford v. Vento*, 48 S.W.3d 749, 755–56 (Tex. 2001); *Ware v. Scott*, 257 S.E.2d 855, 858 n.3 (Va. 1979); *Ollerman v. O'Rourke Co., Inc.*, 94 Wis.2d 17, 26–27 (1980).

4

hide the damage. *See* 3 Dan B. Dobbs et al., *The Law of Torts* § 682 (2d ed. 2011). The second situation occurs "when the defendant successfully prevents the plaintiff from making an investigation that he would otherwise have made, and which, if made, would have disclosed the facts; or when the defendant frustrates an investigation." Restatement (Second) of Torts § 550 cmt. b.

The second theory of liability that could apply to this case is liability for nondisclosure, as described in § 551 of the Restatement. Under this theory, a defendant may be liable for nondisclosure of a material fact even if the defendant did not actively conceal that fact. In other words, under this theory, a defendant's "mere silence" may result in liability. *See Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Pension Trust*, 38 P.3d 12, 35 (Ariz. 2002) ("[T]he common law clearly distinguishes between concealment and nondisclosure. The former is characterized by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter. The latter is characterized by mere silence."). However, for the defendant's mere silence to result in liability, the defendant must have been under a duty to disclose the fact. *See* Restatement (Second) of Torts § 551(1). The Restatement lists five categories of facts that a "party to a business transaction" must disclose:

> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
>
> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
>
> (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

5

> (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and
>
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

*Id.* § 551(2). In the present case, only subsection (2)(e) is applicable. That is, GM would have had a duty to disclose the propensity of the dashboards to crack only if that fact was "basic to the transaction" and the circumstances were such that the plaintiffs would reasonably expect GM to disclose it.[8]

In the present case, although the plaintiffs generally allege that GM engaged in fraudulent concealment, this case is really one involving nondisclosure under § 551 rather than concealment under § 550. The plaintiffs have not alleged any specific facts giving rise to a reasonable inference that GM engaged in fraudulent concealment, *i.e.*, that it intentionally prevented the plaintiffs from discovering the propensity of the dashboards to crack. The plaintiffs generally allege that "GM concealed and suppressed material facts concerning" the cracked-dashboard defect and related matters. *See, e.g.* Compl. ¶¶ 86–88. But this is the type of conclusory allegation that, under *Twombly* and *Iqbal*, I do not have to accept as true. *See Iqbal*, 556 U.S. at 679. And the complaint does not allege any specific facts that would amount to active

---

[8] A question arises as to whether GM was a "party to a business transaction" within the meaning of § 551(2). This is because the complaint does not allege that GM directly sold any vehicles to the plaintiffs. Rather, the complaint alleges that the plaintiffs purchased their vehicles from GM dealers. *See* Compl. ¶¶ 6a, 9a, 12a, 15, 18, 21, 26, 29, 32, 35, 38, 41, 44, 47, 50, 53, 56. However, GM has not moved to dismiss the fraud or deceptive-practices claims on the ground that the plaintiffs did not enter into a sales transaction directly with GM. Nor has GM moved to dismiss the breach of warranty claims for lack of privity.

6

concealment. That is, the complaint does not allege that GM did anything equivalent to a seller's hiding signs of termites with wallboard, or that it discouraged potential buyers from proceeding with investigations that likely would have revealed the defect. Rather, what the complaint alleges is that GM simply did not disclose the cracked-dashboard defect to potential buyers. This is therefore not a case involving fraudulent concealment; it is one involving nondisclosure. As liability for nondisclosure exists only if the defendant had a duty to disclose, I turn to the question of whether the complaint pleads facts from which it may reasonably be inferred that GM had a duty to disclose the propensity of the dashboards to crack.

For GM to have had a duty to disclose the propensity of the dashboards to crack, the facts relating to this problem must be deemed "basic to the transaction." Restatement (Second) Torts § 551(2)(e). The comments to the Restatement elaborate on this requirement as follows:

> A basic fact is a fact that is assumed by the parties as a basis for the transaction itself. It is a fact that goes to the basis, or essence, of the transaction, and is an important part of the substance of what is bargained for or dealt with. Other facts may serve as important and persuasive inducements to enter into the transaction, but not go to its essence. These facts may be material, but they are not basic. If the parties expressly or impliedly place the risk as to the existence of a fact on one party or if the law places it there by custom or otherwise the other party has no duty of disclosure.

*Id.* cmt. j. The Restatement also states that, "[i]n general, the cases in which the rule stated in Clause (e) has been applied have been those in which the advantage taken of the plaintiff's ignorance is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling, in which the plaintiff is led by appearances into a bargain that is a trap, of whose essence and substance he is

7

Case 2:15-cv-00435-LA   Filed 08/25/16   Page 7 of 16   Document 24

concealment. That is, the complaint does not allege that GM did anything equivalent to a seller's hiding signs of termites with wallboard, or that it discouraged potential buyers from proceeding with investigations that likely would have revealed the defect. Rather, what the complaint alleges is that GM simply did not disclose the cracked-dashboard defect to potential buyers. This is therefore not a case involving fraudulent concealment; it is one involving nondisclosure. As liability for nondisclosure exists only if the defendant had a duty to disclose, I turn to the question of whether the complaint pleads facts from which it may reasonably be inferred that GM had a duty to disclose the propensity of the dashboards to crack.

For GM to have had a duty to disclose the propensity of the dashboards to crack, the facts relating to this problem must be deemed "basic to the transaction." Restatement (Second) Torts § 551(2)(e). The comments to the Restatement elaborate on this requirement as follows:

> A basic fact is a fact that is assumed by the parties as a basis for the transaction itself. It is a fact that goes to the basis, or essence, of the transaction, and is an important part of the substance of what is bargained for or dealt with. Other facts may serve as important and persuasive inducements to enter into the transaction, but not go to its essence. These facts may be material, but they are not basic. If the parties expressly or impliedly place the risk as to the existence of a fact on one party or if the law places it there by custom or otherwise the other party has no duty of disclosure.

*Id.* cmt. j. The Restatement also states that, "[i]n general, the cases in which the rule stated in Clause (e) has been applied have been those in which the advantage taken of the plaintiff's ignorance is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling, in which the plaintiff is led by appearances into a bargain that is a trap, of whose essence and substance he is

unaware." *Id.* cmt. *l*. One example of a fact deemed basic to a transaction, and which must be disclosed, is the fact that a residential house is riddled with termites. *Id.* illus. 3.

In the present case, the propensity of the GM dashboards to crack and result in cosmetic damage that costs between $100 and $2,000 to repair is not a fact basic to the transaction. Although the crack may be unsightly, it is not a defect that rises to the level of a home being infected with termites. Simply put, a person who purchases a vehicle that functions as expected but might experience a dashboard crack at some point during its useful life has not been swindled. However, the complaint alleges that the defect does not merely result in cosmetic damage, but also presents a safety concern. As noted, the complaint alleges that a crack "could interfere with the deployment of the passenger airbag," that the dash "is more likely to splinter in unplanned and potentially dangerous directions" during airbag deployment, and that the propensity of the dashboard to crack makes it "more susceptible to shattering, which creates the potential for bodily harm from shrapnel during impact." Compl. ¶ 4. If it is true that a cracked dashboard has the propensity to cause personal injuries, either through interference with the airbag or causing the dash to send shrapnel through the vehicle during an accident, then it is at least plausible to consider facts about these safety risks as being basic to the transaction.

GM contends that the plaintiffs' allegations about a cracked dashboard's posing a safety risk are speculative. However, the complaint specifically alleges the ways in which a cracked dashboard could cause personal injuries—either by interfering with airbag deployment or by sending shrapnel through the interior of the vehicle during an accident—and on a motion to dismiss I am required to accept these specific factual

8

allegations as true. Although the plaintiffs do not include allegations showing how they determined that a cracked dashboard poses these risks, I am unaware of any rule of pleading that would require them to include such information in the complaint. All that the plaintiffs are required to do in a complaint is allege facts that state a claim. Whether they have proof to support these allegations is a matter to be addressed later, either at summary judgment or at trial. So for now, I accept the plaintiffs' allegations that a cracked dashboard could cause personal injuries either by interfering with airbag deployment or by sending shrapnel through the interior of the vehicle.

However, for the plaintiffs to state a valid claim for nondisclosure of this safety risk, they must not only allege that the risk exists (which they have done) but also allege that GM knew of the risk at or before the time the plaintiffs purchased their vehicles. *See, e.g., Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) (applying California law and recognizing that plaintiffs must allege a manufacturer's knowledge of a defect to succeed on claims of deceptive trade practices and fraud). Here, the complaint comes up short. The earliest that a named plaintiff purchased a GM vehicle was November 16, 2009.[9] Compl. ¶ 29. Thus, for all named plaintiffs to have viable fraud claims, the complaint must adequately allege that GM knew by this date both that the dashboards were likely to crack and that this defect posed the safety concerns alleged in the complaint. However, as explained below, the complaint does not allege that GM was aware of either of these facts by that date.

---

[9] It is possible that some potential class member purchased a GM vehicle before the earliest date, or after the latest date, on which a named plaintiff purchased his or her vehicle. However, because no class has yet been certified, for now I focus only on whether the named plaintiffs have stated claims.

9

First, although the complaint alleges that "GM has long known" of the propensity of the dashboards to crack, and that it hired a third party to conduct testing to determine the cause of the cracking defect, ¶ 6, it does not identify any specific point in time at which GM became aware of the problem or conducted the test. There is no allegation that GM became aware of the defect before all plaintiffs purchased their vehicles, and there is no allegation that GM learned of the problem by a specific date. The complaint does allege that GM became aware of the propensity of the dashboards to crack "after the GM Vehicles were manufactured." ¶ 73. However, it does not allege how soon after these vehicles were manufactured that GM learned of the defect, and thus the allegation does not give rise to a plausible inference that this was before the plaintiffs made their purchases. The complaint also alleges that GM received "numerous and myriad complaints" about cracked dashboards, *id.*, but it does not allege when GM received these complaints or that they were received before the plaintiffs purchased their vehicles. At several points in the complaint, the plaintiffs allege that GM "knew or should have known" of the problem by July 10, 2009, the date on which it emerged from bankruptcy. *See, e.g.*, ¶ 124. But because the plaintiffs' fraud claims require GM to have actually known of the defect, the allegation that GM "knew or should have known" of the defect by July 10, 2009 is insufficient. Had plaintiffs alleged simply that GM "knew" of the defect by that date, the complaint might have at least adequately alleged GM's knowledge of the defect by that date, even though it would not have adequately alleged that GM also knew of the safety risk by that date. But as it stands, the complaint does not even adequately allege that GM knew of propensity of the

10

dashboards to crack by July 2009 or any other date that precedes that plaintiffs' purchases.

A deeper problem is that the complaint does not allege when GM became aware of the alleged safety risk. No allegation of the complaint even alleges that GM was aware of the safety risk as of the date the complaint was filed, much less that GM was aware of this risk before the plaintiffs purchased their vehicles. Moreover, it is impossible to reasonably infer from the complaint's allegations that GM was aware of the safety risk before the plaintiffs purchased their vehicles. Here, GM's point that the complaint does not explain how the plaintiffs determined that a cracked dashboard poses the alleged safety risk is well taken. For all the complaint reveals, the named plaintiffs might be the only people in the world who think that a dashboard that cracks in the areas alleged could interfere with the deployment of an airbag or cause a dashboard to shatter and send shrapnel through the interior of the vehicle. The complaint does not allege that any person was ever injured because of a cracked dashboard, that a cracked dashboard ever interfered with an airbag or caused a dashboard to shatter, or that any reports about the potential safety risks of a cracked dashboard were made public or transmitted to GM. Although the complaint alleges that GM hired a third party to test the dashboard and attempt to determine the cause of the cracking, ¶ 6, the complaint does not allege that this testing occurred before the plaintiffs purchased their vehicles or that it revealed any safety concerns. Thus, the complaint does not allege that GM was aware of the safety risk before the plaintiffs purchased their vehicles, and it follows that the complaint also does not adequately allege that GM was under a duty to disclose that risk to the plaintiffs.

11

I note that my conclusion that the plaintiffs have not adequately alleged GM's knowledge of the defect and of the safety risk is not based on the pleading requirement that the circumstances constituting fraud be stated with particularity. *See* Fed. R. Civ. P. 9(b). Rather, even when necessary to support a fraud claim, "knowledge" may be alleged generally. *Id.*; *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009); *Hefferman v. Bass*, 467 F.3d 596, 601–02 (7th Cir. 2006). So the plaintiffs needed only to generally allege that GM was aware of both the defect and the safety risk before any plaintiff purchased his or her vehicle. However, as discussed, the complaint does not contain even that general allegation, and therefore all of the plaintiffs' fraud and statutory deceptive-practices claims must be dismissed.[10]

I next turn to the plaintiffs' claims for breach of the implied warranty of merchantability. GM first argues that this claim must be dismissed because it disclaimed the implied warranty of merchantability in its limited-warranty booklet. However, disclaimer of an implied warranty is an affirmative defense. *Sanco, Inc. v. Ford Motor Co.*, 771 F.2d 1081, 1088 (7th Cir. 1985); *Williams v. Gradall Co.*, 990 F.Supp. 442, 446 (E.D. Va. 1998); *Orthoflex, Inc. v. ThermoTek, Inc.*, Nos. 3:11-CV-0870-D, 3:10-CV-2618-D, 2013 WL 4045206, at *2 (N.D. Tex. Aug. 9, 2013); *In re iPhone 4S Consumer Litigation*, No. C 12–1127, 2013 WL 3829653, at *15 (N.D. Cal. July 23, 2013). Complaints need not anticipate, and attempt to plead around, potential affirmative defenses, and therefore a complaint may not be dismissed on the basis of an affirmative defense. *Davis v. Ind. State Police*, 541 F.3d 760, 763–64 (7th Cir. 2008).

---

[10] Because I am dismissing the plaintiffs' fraud and deceptive-practices claims for failure to adequately plead GM's knowledge of the defect and safety risk, I do not consider GM's arguments that plaintiffs have not adequately pleaded other elements of such claims, including reliance and damages.

12

One exception to this rule is that a complaint may be dismissed where it "contains everything needed to show that the defendant must prevail on an affirmative defense." *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 658 F.3d 662, 665 (7th Cir. 2011). However, in the present case, the complaint does not allege facts establishing beyond doubt that GM validly disclaimed the implied warranty of merchantability. Accordingly, I will not dismiss the plaintiffs' implied warranty claims on the basis of GM's affirmative defense.

GM also argues that the complaint does not adequately allege that the plaintiffs' vehicles were not merchantable. Goods are merchantable when, among other things, they are fit for their ordinary purposes. *See* U.C.C. § 2-314(2)(c). A vehicle is fit for its ordinary purpose when it is able to provide safe, reliable transportation. *Taterka v. Ford Motor Co.*, 86 Wis. 2d 140, 146 (1978) However, goods are not merchantable when they are not reasonably safe. 1 Barkley Clark & Christopher Smith, *The Law of Product Warranties* § 5:4 (2010); 1 David G. Owen & Mary J. Davis, *Owens & Davis on Products Liability* § 4:16 (4th ed. 2014). As discussed above, the plaintiffs have adequately alleged that the propensity of the dashboards to crack poses a safety risk, in that a crack may interfere with the deployment of an airbag or cause the dashboard to shatter and send shrapnel through the vehicle's interior during an accident. The plaintiffs further allege that this safety risk is "substantial." Compl. ¶ 4. It is plausible to infer from these allegations that the plaintiffs' vehicles are not reasonably safe to drive, although it remains to be seen whether the plaintiffs can actually prove that they are not. Therefore, I conclude that the complaint states a claim for breach of the implied warranty of merchantability.

The plaintiffs have also pleaded a claim for breach of implied warranty under the Magnuson-Moss Warranty Act, which provides a cause of action for breach of an implied warranty that arises under state law. *See* 15 U.S.C. §§ 2301(7), 2310(d)(1). A plaintiff who prevails on a claim for breach of implied warranty under the Magnuson-Moss Warranty Act may recover reasonable attorneys' fees. *Id.* § 2310(d)(2). As discussed above, the plaintiffs have adequately pleaded claims for breach of the implied warranty of merchantability under state law, and thus they also have stated claims for breach of implied warranty under the Magnuson-Moss Warranty Act. However, the defendant contends that the plaintiffs have failed to satisfy the Magnuson-Moss Warranty Act's jurisdictional requirement for class actions—namely, that there be at least 100 named plaintiffs. *See id.* § 2310(3)(C). As noted, in this case, there are only 19 named plaintiffs. However, although the plaintiffs do not satisfy the jurisdictional requirement of the Magnuson Moss Warranty Act, they have properly alleged that I have subject matter jurisdiction over their state-law claims under CAFA. Because I have original jurisdiction over the plaintiffs' state-law claims under CAFA, and because the Magnuson-Moss claim is part of the same case or controversy as the state-law claims, I may exercise supplemental jurisdiction over the Magnuson-Moss claim. *See* 28 U.S.C. § 1367; *Burzlaff v. Thoroughbred Motorsports, Inc.*, 758 F.3d 841, 844–45 (7th Cir. 2014) (holding that district courts may exercise supplemental jurisdiction over Magnuson-Moss claims); *Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516, 522 (7th Cir. 2003) (same). Therefore, I will not dismiss the Magnuson-Moss claim.

The remaining claim to consider is unjust enrichment. The plaintiffs allege that this claim is governed by Indiana law, and GM concedes for purposes of its motion that

14

Indiana law applies. Under Indiana law, to prevail on a claim of unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust. *Good v. Ind. Teachers Ret. Fund*, 31 N.E.3d 978, 982 (Ind. Ct. App. 2015). Here, the plaintiffs contend that GM's retention of any profits it made on the sales of vehicles to the plaintiffs would be unjust because GM knew of the propensity of the dashboards to crack but did not disclose the defect. For this reason, the plaintiffs' unjust enrichment claim is indistinguishable from their fraud and deceptive-practices claims. As I discussed in connection with those claims, the plaintiffs have failed to plead that GM had knowledge of either the defect itself or the alleged safety risk posed by the defect. Absent GM's knowledge of these facts, I do not see how GM's retention of any benefit could be unjust. Thus, I will dismiss the unjust-enrichment claim.

Finally, the defendant seeks dismissal of certain named plaintiffs' claims on the ground that the statute of limitations has run and the plaintiffs have not pleaded facts that would support tolling or other doctrines that might extend the limitations period. However, the statute of limitations is an affirmative defense that a plaintiff is not required to anticipate and plead around, and thus it is not a proper ground for dismissing a complaint under Rule 12(b)(6) unless the plaintiff has pleaded all of the elements of the defense in the complaint. *E.g. Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). In this case, the plaintiffs have not pleaded facts establishing that their claims are barred by the statute of limitations and not subject to any tolling rule. Accordingly, whether any plaintiff's claim is time-barred is a question to be taken up at a later stage of the case.

15

For the reasons stated, **IT IS ORDERED** that GM's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Counts 1, 2, and 4–27 are dismissed. Counts 3, and 28–35 are not dismissed.

**IT IS FURTHER ORDERED** that a telephonic status conference will be held on **September 21, 2016 at 11:30 a.m. CST.** The court will initiate the call. Attorneys should call 414/297-1285 with contact information.

Dated at Milwaukee, Wisconsin, this 25th of August 2016.

s/ Lynn Adelman

LYNN ADELMAN
District Judge